UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

HELEN MCFARLIN,

Plaintiff,

Case No. 26-cv-
Hon.

v.

CITY OF DETROIT,

Defendant.
___________________________________/

ERIC STEMPIEN (P58703)
MALLORIE M. BLAYLOCK-DANNA (P84331)
STEMPIEN LAW, PLLC
Attorneys for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
eric@stempien.com
mallorie@stempien.com
___________________________________/

**COMPLAINT AND JURY DEMAND**

Plaintiff, Helen McFarlin, by and through her attorneys, Stempien Law, PLLC, hereby complains against Defendant, City of Detroit, and in support thereof states:

1. Plaintiff Helen McFarlin ("McFarlin" or "Plaintiff") is a resident of the City of Detroit, County of Wayne, State of Michigan.

2. Defendant City of Detroit ("Detroit" or "Defendant") is a political subdivision of the State of Michigan duly authorized and operating pursuant to the Constitution and statutes of the State of Michigan.

3. Plaintiff brings claims in this lawsuit under Title VII of the Civil Rights Act ("Title VII"), 42 USC §2000e et seq., and the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §37.2101 et seq.

4. Jurisdiction is vested with this Court pursuant to 28 USC §1331, 42 USC §2000e, et. seq., 28 USC §1367, and 28 USC §1343(a)(3) and (4).

5. Venue is proper because the parties reside in, and events giving rise to this action occurred in, the Eastern District of Michigan.

6. On or about December 19, 2023, McFarlin filed a Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR").

7. On or about August 20, 2026, the Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights letter to McFarlin for her Charge of Discrimination upon her request to pursue this matter in court.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if the same were fully incorporated herein and further states:

9. McFarlin's sex is female.

10. McFarlin's sexual orientation is lesbian.

11. On or about December 20, 2021, McFarlin began her employment with Detroit as an auto mechanic where she performs mechanical work on city-owned vehicles as its Russell Ferry Garage located at 5800 Russell Street, Detroit, Michigan 48211.

12. McFarlin holds an associate's degree in Automotive Technology of Applied Science and is qualified to perform mechanical work.

13. McFarlin continues to hold her position as an auto mechanic through the present.

14. During her tenure as an employee of Detroit's, McFarlin was subjected to harassment and retaliation based on her sex and sexual orientation.

15. McFarlin was not harassed or discriminated against prior to Wayne Washington ("Washington") transferring to the Russell Ferry Garage and becoming McFarlin's supervisor.

16. At all relevant times after Washington's transfer, Washington was McFarlin's supervisor and he had supervisory authority over McFarlin.

17. Prior to Washington's tenure as McFarlin's supervisor, McFarlin was not subject to verbal or written disciplinary action.

18. Washington did not permit McFarlin to take breaks, like non-female and non-lesbian employees were permitted to take.

19. Washington did not permit McFarlin to socialize with her coworkers, like non-female and non-lesbian employees were permitted to.

20. McFarlin was informed by her coworkers that Washington would refer to her as a ‘dyke.’

21. McFarlin hoped that Washington referring to her as a ‘dyke’ was just a rumor, but then she heard Washington tell her coworker, Terell, ‘this is no place for a woman,’ ‘ain’t she a dyke,’ and ‘I’m going to get rid of that dyke b***h.’

22. Washington would demean McFarlin because of her sex and sexual orientation.

23. When Washington would walk past McFarlin or was otherwise in the same area as her, he would harass her for not performing her work task fast enough, regardless of what task McFarlin was performing.

24. Washington would openly state that McFarlin is a ‘sorry excuse for a worker,’ is ‘good for nothing,’ ‘does nothing,’ and that it takes her ‘all day’ to do her job.

25. On a date at or near the end of June 2023, after McFarlin left the office where she went to punch in, Washington stated that when Scottie Odum (“Odum”) leaves, Washington was going to make McFarlin’s life harder.

26. After Odum left his employment for personal reasons, Washington harassed McFarlin on an almost daily basis.

27. On or about July 23, 2023, McFarlin reported to the acting senior supervisor, Jay ("Jay"), that Washington was harassing her.

28. On or about July 24, 2023, Jay told McFarlin that he spoke with Washington and 'there won't be any more problems with him harassing' McFarlin.

29. On or about July 27, 2023, Washington resumed his harassment and discrimination of McFarlin and began retaliating against her for reporting the harassment and discrimination.

30. On or about July 27, 2023, as McFarlin entered the area where her coworkers were at, Washington loudly announced, 'she said I was harassing her, y'all!'

31. Washington then confronted McFarlin and asked her why she reported to Jay that he (Washington) was harassing her.

32. McFarlin truthfully told Washington that he 'rides her back pretty hard,' and always tell her how she does not do any work, and asked Washington why he does that. Washington then told McFarlin, 'because you don't do no damn work!'

33. On or about August 3, 2023, as McFarlin was turning in a scanner, Washington stated to Tim, a supervisor, 'this one right here, she don't do no work,' 'all she does is road test good and let the hoist up and down good, and take three days or a week to finish a job.'

34. On a later date in or about August 2023, as McFarlin entered the office to discuss a work order with her director, Marcus Poe ("Poe"), Washington accused McFarlin of having a poor work ethic; specifically, he pointed at McFarlin in front of all persons in the office and stated, 'Now, this one right here is known for rewrites. All she does it rewrites.'

35. On the date of the incident explained in Paragraph (34), Poe was the former senior supervisor, was employed in Defendant's human resources department, and had supervisory authority over Washington.

36. On the date of the incident explained in Paragraph (34), Poe did not make any effort to stop Washington from harassing McFarlin, nor was any corrective action taken.

37. On or about September 11, 2023, when McFarlin was picking up parts in the Parts Dept., Washington confronted her, stated 'you still ain't doing no work,' then proceeded to state to two Parts Dept. employees that McFarlin 'is a poor excuse of a worker,' 'this one right here, y'all, don't do no work,' and 'you can count on her not getting nothing done.'

38. Washington threatened to discipline McFarlin with write ups despite having no legal or policy-related reason to do so.

39. On or about September 9, 2023, when McFarlin was performing work on an F350, she turned around and saw Washington recording her from his office,

which caused Washington to become startled and fumble to put his phone away.

40. McFarlin then went to Washington's office, asked him why he was recording her, and Washington stated that he was not recording McFarlin and that he would not waste his camera on her.

41. In or about the first week of October 2023, McFarlin learned that Washington told her co-workers that he 'had something in store' for McFarlin.

42. On or about October 10, 2023, McFarlin was instructed by Washington to report to the Garage's truck-side on Monday, October 16, 2023 because performing oil changes on Detroit's trucks would be her new permanent assignment.

43. McFarlin should not have been instructed to perform oil changes because she works in a Union shop, she is a Union member, and the oil change position should have been filled by either of the two mechanics that were lower in seniority than McFarlin, per Defendant's policy and/or practice.

44. McFarlin asked Washington why he was sending her to the Garage's truck-side because she is a mechanic and did not obtain a degree in automotive technology of applied science to change oil.

45. McFarlin told Washington that he was sending her to perform oil changes on the truck-side because he did not like her; Washington denied that was the case and told McFarlin that it is just a job.

46. McFarlin then told Washington that he should not 'dumb her down' like that, stated that she has seniority over the two male mechanics who were recently hired, and asked why neither of the two new male mechanics were instructed to perform oil changes.

47. McFarlin was unable to politely decline Washington's instruction to perform oil changes as her new permanent assignment because she knew Washington wanted her to decline the oil-change job so that McFarlin could be disciplined, written up, and terminated for refusing an assignment.

48. Washington instructed McFarlin to perform oil changes with the intent that she would become humiliated, insecure, and so self-conscious that she quit and voluntarily terminate her employment.

49. McFarlin reported Washington's discriminatory treatment to Detroit's Human Resources ("HR") multiple times.

50. McFarlin filed grievances with her union against Washington for harassment, discrimination, and unfair treatment in the workplace.

51. On or about October 15, 2023, McFarlin reported to Zena Ridley ("Ridley") that she was being harassed; the harassment is affecting her work; "[i]t is

affecting [her] mentally and emotionally and [she] want[s] it to stop"; she needs help; Washington insults her, embarrasses her, and humiliates her in front of everyone at work; and that she was being forced to perform oil changes.

52. On or about October 15 and 16, 2023, McFarlin reported to Crystal Perkins ("Perkins"), Human Resources, that she was being harassed; it was affecting her work, physically; it was mentally and emotionally disturbing her; and Washington instructed her to perform oil changes.

53. On or about October 16, 2023, McFarlin reported to Ridley that she has "been harassed for months and discriminated against"; she feels she is being treated unfairly and set up for failure; and she was instructed to perform oil changes.

54. Washington caused McFarlin to suffer such extreme mental anguish that it caused her to be unable to focus on her work and resulted in her making mistakes.

55. The emotional and psychological impact of Washington's actions negatively impacted McFarlin's relationship with her spouse as well.

56. As a result of McFarlin's employment conditions, she sought mental health treatment and was forced to take a leave of absence between October 16, 2023 and October 20, 2023.

57. Following the end of McFarlin's leave of absence on October 20, 2023, McFarlin was forced to take additional, paid sick time and vacation time off work for related medical treatment and to give Defendant time to process related documentation.

58. When HR finally contacted McFarlin concerning her reports against Washington, she was asked if she was okay; no other investigation occurred to McFarlin's knowledge.

59. At all relevant times, Washington acted within the course and scope of his employment.

60. At all relevant times, Detroit failed to take any corrective action and the harassment continued.

61. As a direct result of Detroit permitting the hostile work environment and discrimination to continue, McFarlin suffered severe emotional distress.

62. As a result of Defendant's refusal to take appropriate corrective action, McFarlin reported Defendant and Washington to the MDCR and Defendant's Civil Rights, Inclusion & Opportunity Department ("CRIO").

63. Soon after McFarlin reported Defendant and Washington to the MDCR and CRIO, Defendant asked McFarlin if she would agree to a sit down with Washington to discuss the ongoing harassment; McFarlin agreed to meet with

Washington with a union representative present, but the meeting never occurred.

64. Approximately one month after McFarlin reported Defendant and Washington to the MDCR and CRIO, Washington was finally removed from the Garage and was no longer McFarlin's supervisor.

**COUNT I – VIOLATION OF TITLE VII**
**(SEX DISCRIMINATION)**

65. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

66. At all material times, Plaintiff was an employee, and Defendant was her employer, as those terms are defined by Title VII.

67. Title VII prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment because of the employee's sex. 42 USC 2000e-2(a)(1).

68. Defendant subjected Plaintiff to humiliation, limitation, bullying, unwarranted discipline, name calling, and harassment because of her sex.

69. Defendant maintains an unofficial practice that its supervisors are permitted to belittle, bully, and harass female employees.

70. Defendant's unofficial policy serves to exclude Plaintiff from valuable professional development opportunities on the basis of her sex.

71. As a result of this discrimination, Plaintiff suffered adverse employment action.

72. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

**COUNT II – VIOLATION OF THE ELCRA**
**(SEX DISCRIMINATION)**

73. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

74. Plaintiff was employed by Defendant at all relevant times.

75. The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's sex. MCL §37.2202(1)(a).

76. Defendant subjected Plaintiff to humiliation, limitation, bullying, unwarranted discipline, name calling, and harassment because of her sex.

77. The ELCRA also prohibits employers from segregating or classifying employees in a way that would tend to deprive them of opportunities on the basis of their sex. MCL §37.2202(1)(b).

78. Defendant maintains an unofficial practice that its supervisors are permitted to belittle, bully, and harass female employees.

79. Defendant's unofficial policy serves to exclude female employees from valuable professional development opportunities on the basis of their sex.

80. As a result of this discrimination, Plaintiff suffered adverse employment action.

81. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

**COUNT III – VIOLATION OF THE ELCRA**
**(SEXUAL ORIENTATION DISCRIMINATION)**

82. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

83. The ELCRA provides that:

> (1) **An employer shall not** do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise **discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of** religion, race, color, national origin, age, sex, **sexual orientation**, gender identity or expression, height, weight, or marital status.
>
> (b) **Limit, segregate, or classify an employee** or applicant for employment **in a way that deprives or tends to deprive the employee** or applicant **of an employment opportunity or otherwise adversely affects the status of the employee** or applicant

> **because of** religion, race, color, national origin, age, sex, **sexual orientation**, gender identity or expression, height, weight, or marital status.

MCL §37.2202(1)(a)-(b). (emphasis added).

84. Plaintiff was an employee, and Defendant was her employer, as those terms are defined by the ELCRA.

85. Plaintiff is a member of a protected class because of her sexual orientation.

86. Plaintiff was qualified for the position of auto mechanic.

87. Defendant discriminated against Plaintiff with respect to employment, compensation, or a term, condition, or privilege of employment, because of her sexual orientation.

88. Defendant limited, segregated, or classified Plaintiff in a way that deprived her, or tended to deprive her, of an employment opportunity or otherwise adversely affected Plaintiff's status as an employee because of her sexual orientation.

89. Plaintiff suffered adverse employment actions, including but not limited to humiliation, limitation, bullying, unwarranted discipline, name calling, and harassment because of her sexual orientation.

90. As a direct and proximate result of Defendant's violations of the ELCRA, Plaintiff has suffered damages, including, but not limited to lost past and

future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs, and attorney fees.

**COUNT IV – VIOLATION OF TITLE VII (RETALIATION FOR REPORTING AND OPPOSING SEX DISCRIMINATION)**

91. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

92. Plaintiff engaged in protected activity when she complained to Defendant about the sex discrimination by Defendant's employees, as fully described above.

93. Plaintiff's protected activity was known to Defendant.

94. Defendant failed and refused to take any action regarding the sex discrimination of Plaintiff.

95. Plaintiff suffered adverse employment actions, including but not limited to humiliation, limitation, bullying, unwarranted discipline, name calling, reprimand, and harassment because of her sex.

96. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

97. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment

benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

**COUNT V – VIOLATION OF THE ELCRA (RETALIATION FOR REPORTING AND OPPOSING SEX DISCRIMINATION)**

98. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

99. Plaintiff engaged in protected activity when she complained to Defendant about the repeated sex discrimination by Defendant's employees, as fully described above.

100. Plaintiff's protected activity was known to Defendant.

101. Defendant failed and refused to take any action regarding the sex discrimination of Plaintiff.

102. Plaintiff suffered adverse employment actions, including but not limited to humiliation, limitation, bullying, unwarranted discipline, name calling, reprimand, and harassment because of her sex.

103. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

104. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

**COUNT VI – VIOLATION OF THE ELCRA (RETALIATION FOR REPORTING AND OPPOSING SEX DISCRIMINATION)**

105. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

106. Plaintiff engaged in protected activity when she complained to Defendant about the sexual orientation discrimination by Defendant's employees, as fully described above.

107. Plaintiff's protected activity was known to Defendant.

108. Defendant failed and refused to take any action regarding the sexual orientation discrimination of Plaintiff.

109. Plaintiff suffered adverse employment actions, including but not limited to humiliation, limitation, bullying, unwarranted discipline, name calling, reprimand, and harassment because of her sexual orientation.

110. There is a causal connection between the protected activity and adverse employment actions taken against Plaintiff.

111. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

WHEREFORE, Plaintiff, Helen McFarlin, prays that this Honorable Court:

a. award damages to Plaintiff that reflect her economic losses,

b. award Plaintiff compensatory damages for her humiliation,

c. award Plaintiff punitive damages reflecting the blatant disregard Defendant demonstrated for Plaintiff's rights under both Title VII and the ELCRA,

d. award Plaintiff attorney fees, witness fees, and costs; and

e. grant any other relief the court deems appropriate or necessary.

## **JURY DEMAND**

Plaintiff, Helen McFarlin, hereby demands a trial by jury of the within cause.

Respectfully submitted,

STEMPIEN LAW, PLLC

*/s/ Mallorie M. Blaylock-Danna*
Mallorie M. Blaylock-Danna (P84331)
Attorney for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
mallorie@stempien.com

Dated: November 17, 2026